Harold W. GREENWELL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18193.

United States Court of Appeals District of Columbia Circuit.

Argued March 30, 1964.

Decided Aug. 13, 1964.

[4] 74 STAT. 68, 21 U.S.C.A. § 516 (Supp. IV, 1963).

Mr. Dean F. Cochran (appointed by this court), Washington, D. C., for appellant.

Mr. B. Michael Rauh, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker, Asst. U. S. Atty., and Frederick G. Smithson, Asst. U. S. Atty. at the time the record was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and WRIGHT and McGOWAN, Circuit Judges.

WRIGHT, Circuit Judge.

Appellant, a youthful indigent, was convicted of robbing a District of Columbia bank in violation of 18 U.S.C. § 2113(a). This case has been here before,[1] and we have also previously considered the conviction of the co-defendant with whom he was tried.[2] Before us now are appellant's contentions that illegally obtained oral and written confessions, as well as certain illegally obtained physical evidence, were used against him at his trial.

## I.

According to police testimony, appellant was arrested at about 9:00 P.M. on a weekday evening, September 26, 1961, inside a motion picture theater in Fort Worth, where he was sitting with his wife and infant child. The arresting officers—two F.B.I. agents assisted by two local policemen—informed him of the outstanding federal arrest warrant under which they were acting, and he readily admitted he was the man sought.[3] Immediately after the arrest, the agents put appellant and his wife and child in a police vehicle and drove to the home of her mother where the wife and child were left. Continuing on in the car, the officers drove a few blocks

1. Greenwell v. United States, 115 U.S.App. D.C. 44, 317 F.2d 108 (1963). Previously, on direct appeal, we decided that the District Court erred in denying at least some of appellant's requests to subpoena witnesses from Fort Worth, Texas. We held that an indigent defendant's requests for subpoenas under Rule 17(b), F.R.Cr. P., should be granted "equal treatment," as far as possible, with a paying defendant's subpoenas under Rule 17(a); in either case, unless the request is unreasonable or oppressive, the material witnesses desired by the defendant must be subpoenaed. 115 U.S.App.D.C. at 46 n. 5, 317 F.2d at 110 n. 5. We remanded for the purpose of determining whether the error was sufficiently prejudicial to require a new trial, and reserved the question "whether the facts, as developed in the present record, require exclusion of the confessions or fruits of the search under the Mallory rule." 115 U.S.App.D.C. at 47 n. 7, 317 F.2d at 111 n. 7.

The District Court, on remand, has

decided that the error in denying the subpoenas was harmless. Thus we have on this proceeding, subsequent to remand, only the original record. As we decide this case on other grounds, including the grounds hitherto reserved, we do not reach the question of the prejudice caused by failing to grant the subpoenas.

2. Seals v. United States, 117 U.S.App.D.C. 79, 325 F.2d 1006 (1963), cert. denied, 376 U.S. 964, 84 S.Ct. 1123, 11 L.Ed.2d 982 (1964).

3. Identity being established, the police had no further occasion to determine if he was the man sought, compare Heideman v. United States, 104 U.S.App.D.C. 128, 130, 259 F.2d 943, 945 (1958), and, since they were acting under the command of a warrant, had "one duty and one duty only; * * * to arrest the person * * *." Morrison v. United States, 104 U.S.App.D.C. 352, 355, 262 F.2d 449, 452 (1958).

and then parked on the street under a street lamp. The officers gave appellant their own substitute for a magistrate's advice as to his rights, and proceeded to interview him concerning the crime for which the warrant had issued. Within a few minutes, according to police testimony given at trial, appellant confessed to the crime in general terms.

During this interview, according to the arresting officers, appellant voluntarily stated to them that there was a sum of money at his parents' home, the proceeds of the robbery. Immediately thereafter the four officers took appellant to that house where the group entered two bedrooms. While the police held him by the belt, according to their own testimony, appellant uncovered from their hidden caches a number of items, including $2,083.00 in currency and a toy pistol. The seized items were taken by the officers and used against appellant at trial; a number of bills were found to have serial numbers identical with money stolen from the bank, and the toy gun was also connected to the holdup.

After the recovery of the evidence in appellant's parents' home, the F.B.I. agents brought him to local police headquarters. There, according to the agents, he voluntarily signed an extensive written confession covering the crime in some detail. Appellant was not brought before a magistrate until the next afternoon.

As noted in our prior opinion: "The Government's and appellant's versions of the relevant facts—as developed in the pre-trial documents and trial testimony —were diametrically opposed. * * * Appellant * * * testified that he was 'grabbed . . . in the back of [his] pants,' threatened with physical violence, slapped in the face when he refused to confess orally, and tricked or beaten into signing the written confession; moreover, he denied consenting to the 'search' of his mother's home." 115 U.S.App.D.C. at 45, 317 F.2d at 109.[4]

II.

■ The law requires an arresting officer to bring an accused before a magistrate "as quickly as possible." Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); Naples v. United States, 113 U.S.App.D.C. 281, 284, 307 F.2d 618, 621 (1962) (en banc).[5] We must decide whether appellant was "promptly taken before a judicial officer as the law required," or was "questioned while held in 'plain disregard of the duty enjoined by Congress upon Federal law officers' promptly to take [his] before a judicial officer." Upshaw v. United States, supra Note 5, 335 U.S. at 413, 69 S.Ct. at 171, explaining McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

4. See Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

5. After arrest, "[t]he *next step* in the proceeding is to arraign the arrested person before a judicial officer *as quickly as possible* so that he may be advised of his rights and so that the issue of probable cause may be *promptly* determined." Mallory v. United States, *supra*, 354 U.S. at 454, 77 S.Ct. at 1359. (Emphasis added.) Upon the arrest of appellant, it was the duty of the officers to carry him " 'forthwith' before a committing magistrate, as the law commands." Upshaw v. United States, 335 U.S. 410, 411, 69 S.Ct. 170, 171, 93 L.Ed. 100 (1948). (Emphasis added.) The federal arrest warrant under which the officers acted reads: "You are hereby commanded to arrest

[the accused] and bring him *forthwith*" before a magistrate. (Emphasis changed.) And the Federal Rule for arrest in a distant district, involved herein, incorporates Rule 5(a)'s familiar requirement of presentment "without unnecessary delay." Rule 40(b), F.R.Cr.P. See Jones, Short and Jones v. United States, —— U.S.App. D.C. ——, —— F.2d ——, p. —— (Nos. 17,-688–17,692, decided July 16, 1964) slip opinion pp. 3–6 (*en banc*). Indeed, we note in passing, in reference to arrest in this District without warrants, Congress has similarly provided that the arresting "member of the police force shall *immediately, and without delay*, upon such arrest, convey in person such offender before the proper court, that he may be dealt with according to law." 4 D.C.Code § 140 (1961). (Emphasis added.)

A basic purpose of Rule 5(a), F.R.Cr.P., is to make certain that a person arrested is advised *by a judicial officer* of his constitutional right to counsel and of his privilege against self-incrimination "without unnecessary delay." If the police detain an accused "until he ha[s] confessed," and only then, "when any judicial caution ha[s] lost its purpose, * * * arraign him," Mallory v. United States, *supra,* 354 U.S. at 455, 77 S.Ct. at 1360, the confession is inadmissible no matter how much, or how little, time was required to obtain it. The duration of the delay is not determinative, for "[t]he problem is not to be solved by watching the clock * * *." Muschette v. United States, 116 U.S.App.D.C. 239, 241, 322 F.2d 989, 991 (1963), *rev'd mem. on other grounds,* 378 U.S. 569, 84 S.Ct. 1927, 12 L.Ed.2d 1039 (1964). Once the police delay presentment for the production of evidence, the detention becomes illegal and the time for admissible threshold confessions has passed. See Spriggs v. United States, 118 U.S.App.D.C. ——, 335 F.2d 283 (1964); Perry v. United States, 118 U.S.App.D.C. ——, 336 F.2d 748 (No. 17,846 decided July 31, 1964). Compare United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944).

### III.

Applying this standard, appellant's first confession must be excluded. Appellant's statements were not spontaneous admissions made immediately on arrival at a police station, while awaiting booking. Compare Naples v. United States, *supra,* 113 U.S.App.D.C. at 283, 307 F.2d at 620. The parking of the police vehicle en route from the place of arrest was admittedly a detour from the path toward prompt presentment, taken for the purpose of securing statements from the accused as to the crime. *Cf.* Akowskey v. United States,

81 U.S.App.D.C. 353, 158 F.2d 649 (1946). Interviews by Government agents with accused persons in the absence of counsel may be employed to develop investigative leads as to others, but not to produce evidence for the trial of the accused. *Cf.* Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) (and see New York cases cited *id.,* 377 U.S. at 205, n. 5, 84 S.Ct. at 1202 n. 5); Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

Ordinarily, arrest is the culmination, not the beginning, of police investigation. Under our adversary system confessions, including those obtained after the accused has been advised of his rights by the police, are not the normal proofs upon which convictions are obtained.[6] Secret extra-judicial examination to produce damning evidence cannot be allowed to render useless or unavailing the right to "a trial 'in an orderly courtroom, presided over by a judge, open to the public, and protected by all the procedural safeguards of the law.'" Massiah v. United States, *supra,* 377 U.S. at 204, 84 S.Ct. at 1202. To admit such evidence "would make the trial no more than an appeal from the interrogation; and the 'right to use counsel at the formal trial [would be] a very hollow thing [if], for all practical purposes, the conviction is already assured by pretrial examination.'" Escobedo v. Illinois, *supra,* 378 U.S. at 487, 84 S.Ct. at 1763.

The physical evidence recovered from the home of appellant's parents must also be excluded. After arrest, an accused is not to be taken by the police to some location where he can be used to develop Government evidence of guilt. This court has so decided with respect to using an accused to re-enact the crime. Naples v. United States, *supra;* Watson v. United States, 101 U.S.App.D.C. 350, 249 F.2d 106 (1957); Jones v. United

---

6. "The Constitution does not contemplate that prisoners shall be dependent upon government agents for legal counsel and aid, however conscientious and able those agents may be." Von Moltke v. Gillies, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948).

States, 113 U.S.App.D.C. 256, 307 F.2d 397 (1962). The same principle applies to using the accused, before presentment, to recover the proceeds or the means of the crime, as evidence. In Watson v. United States, *supra*, 101 U.S.App.D.C. at 353, 249 F.2d at 109, where we considered the defendant's "admissions, his reenactment of the crime, his consent to the visit to his apartment and his turning over the clothing," we held: "All must fall together, as Mallory v. United States requires, for he was not arraigned until 'judicial caution had lost its purpose.'" And in *Naples* the re-enactment itself, as it reached the jury through "police description of the actions of * * * the unwarned and uncounselled prisoner," was held excludable. 113 U.S.App.D.C. at 284–285, 307 F.2d at 621–622. Similarly here, the recovery, as it reached the court through police description of the actions of the unwarned and uncounselled prisoner, as well as through the physical objects recovered, should have been excluded.

The Government suggests that prompt recovery of the money was necessary to prevent its being removed by appellant's wife, who knew of his arrest. This argument goes to the reasonableness of an immediate search of the parents' home, without a warrant, by one or more of the four arresting officers, or other available police. But it could not authorize delaying appellant's presentment to take him to that home, and to use him to recover the items from their hidden storage places in the bedrooms. The currency and toy pistol were thus things "of evidentiary value which the public authorities have caused [the accused] to yield to them during illegal detention." Bynum v. United States, 104 U.S.App. D.C. 368, 370, 262 F.2d 465, 467 (1958).

The physical objects are excludable for another reason. The police were able to find the objects only because the appellant, during a period of illegal delay, told them of the location of the evidence. Like the narcotics in Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407,

417, 9 L.Ed.2d 441 (1963), this evidence was "come at by exploitation of that illegality," and thus is excludable.

The written confession must also be excluded. Bringing appellant to a detective office at the local police headquarters for him to give a statement of the crime, instead of bringing him to a magistrate for presentment, is exactly what *Mallory* condemned. 354 U.S. at 454, 77 S.Ct. 1356. See Spriggs v. United States, *supra;* Perry v. United States, *supra.* Even were this statement not the tainted consequence of prior illegality, Killough v. United States, 114 U.S.App.D.C. 305, 315 F.2d 241 (1962) (*en banc*), it would have to be excluded as a separate confession, going far beyond any other admissions made by the accused, taken during a period of unlawful delay.

IV.

The Government suggests that appellant consented to the police delay and to the securing of the evidence from his parents' home. But, as this court said in Judd v. United States, 89 U.S.App.D.C. 64, 66, 190 F.2d 649, 651 (1951), cited with approval in Gatlin v. United States, 117 U.S.App.D.C. 123, 326 F.2d 666, 673 (1963):

"* * * [S]uch a waiver or consent must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; United States v. Kelih, D.C.S.D.Ill.1921, 272 F. 484. The Government must show a consent that is 'unequivocal and specific' (Karwicki v. United States, 4 Cir., 55 F.2d 225, 226), 'freely and intelligently given.' Kovach v. United States, 6 Cir., 53 F.2d 639. Thus 'invitations' to enter one's house, extended to armed officers of the law who demand entrance, are usually to be considered as invitations secured by force. United States v. Marquette, D.C.N.D.Cal. 1920, 271 F. 120. A like view has

been taken where an officer displays his badge and declares that he has come to make a search (United States v. Slusser, D.C.S.D.Ohio 1921, 270 F. 818), even where the householder replies 'All right.' United States v. Marra, D.C.W.D.N.Y.1930, 40 F.2d 271. A finding of consent in such circumstances has been held to be 'unfounded in reason'. Herter v. United States, 9 Cir., 27 F.2d 521. Intimidation and duress are almost necessarily implicit in such situations; if the Government alleges their absence, it has the burden of convincing the court that they are in fact absent.

"This burden on the Government is particularly heavy in cases where the individual is under arrest. Nonresistance to the orders or suggestions of the police is not infrequent in such a situation; true consent, free of fear or pressure, is not so readily to be found. United States v. Novero, D.C., 58 F.Supp. 275; United States v. McCunn, D.C.S.D. N.Y.1930, 40 F.2d 295. In fact, the circumstances of the defendant's plight may be such as to make any claim of actual consent 'not in accordance with human experience', and explainable only on the basis of 'physical or moral compulsion'. Ray v. United States, 5 Cir., 84 F. 2d 654, 656."

 Moreover, when dealing with an arrested person "during a period of unnecessary delay within the meaning of Rule 5," courts look with great suspicion on "evidence that a so-called 'willing' but unwarned and uncounselled accused" consented voluntarily to cooperate with the police. Naples v. United States, *supra*, 113 U.S.App.D.C. at 284, 307 F.2d at 621. There is a presumption of involuntariness which the Government must rebut, if it can, with "clear and positive" evidence. See Judd v. United States, *supra*, 89 U.S.App.D.C. at 66, 190 F.2d at 651, and cases cited therein. Were the police version as to the accused's cooperation always to be accepted, the law's restriction on police activity would have little effect. One purpose of the *Mallory* doctrine was to eliminate swearing contests between police and defendant as to what each said and did, by commanding that the defendant be promptly presented. The hearing before the "neutral and detached magistrate," *cf.* Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948), would be an appropriate place for any waivers, consents, or confessions which the accused chose to make, voluntarily and intelligently, after judicial caution and advice of counsel.

 Here the evidence of consent is both weak and contradicted. Whether, absent the opportunity for independent legal advice, there can ever be said to be a truly voluntary and intelligent waiver of the right to prompt presentment after arrest—a right basic to our system of criminal justice—the evidence before us falls far short of establishing that any such waiver occurred here.

## V.

 There is a separate and independent ground which requires reversal here. During appellant Greenwell's trial with his co-defendant Seals, Seals' confession was admitted in evidence. On Seals' separate appeal this court held that "it was error to allow [Seals'] confession, obtained as a result of the unnecessary delay in arraigning him, to be put before the jury." Seals v. United States, *supra* Note 2, 117 U.S.App.D.C. at 80, 325 F.2d at 1009. Since Seals' confession may not be used even against him, it should not be used against Greenwell.[7] And as to Greenwell, Seals' confession is inadmis-

7. The Government cites Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) (Justices Frankfurter, Black, Douglas and Brennan dissented), where it was not feasible to delete references to a co-defendant contained in a confession; there the Court sustained refusal to sever the trials. But that case is not relevant here, for here, unlike *Delli Paoli*, the confession was inadmissible even against the confessor.

 

sible hearsay, and thus also excludable under elementary principles of evidence.

■ It is true that, at trial, Greenwell's name was deleted from his co-defendant's confession, and "named person" or the like substituted, as the strict rule of our cases requires wherever deletion is possible. Kramer v. United States, 115 U.S.App.D.C. 50, 317 F.2d 114 (1963); Oliver v. United States, 118 U.S.App.D.C. ——, 335 F.2d 724 (1964). But with Greenwell and Seals on trial before the same jury at the same time charged with the same crime, and with other evidence in the case connecting the co-defendants in the commission of the crime, it is difficult to believe that the jury was unable to divine who the "anonymous nobody" referred to in the confession was. Stein v. New York, 346 U.S. 156, 194, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). Even had not a witness inadvertently mentioned Greenwell's name once in reciting Seals' confession, as did occur, the jury could well have understood that the person incriminated in Seals' admissions was the other defendant sitting next to him.

■■ We conclude that the admission of Seals' confession, since it was improper as to Seals, justifies the retrial of his co-defendant, Greenwell, in a proceeding in which this confession does not reach the jury,[8] Jones, Short and Jones v. United States, supra Note 5, slip opinion pp. 7–10. See Anderson v. United States, 318 U.S. 350, 355–357, 63 S.Ct. 599, 87 L.Ed. 829 (1943); McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Abrams v. United States, 117 U.S.App.D.C. 200, 327 F.2d 898 (1964); Cross v. United States, 118 U.S.App.D.C. ——, 335 F.2d 987 (1964), and cases therein cited at n.

15, p. 991; cf. Smith v. United States, 118 U.S.App.D.C. ——, 335 F.2d 270 (1964); Drew v. United States, 118 U.S. App.D.C. ——, 331 F.2d 85 (1964).

Reversed and remanded.

[8.] The Government claims that the effect of Seals' confession on Greenwell was harmless, since even without it there was ample evidence against him. But "[w]e are not concerned here with whether there was sufficient evidence on which the [appellant] could have been convicted without the evidence complained of.

The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Fahy v. Connecticut, 375 U.S. 85, 86–87, 84 S.Ct. 229, 231, 11 L. Ed.2d 171 (1963). We believe that Seals' confession may well have contributed to Greenwell's conviction.